**EXHIBIT A**

State of Illinois                )
                                 ) ss
County of St. Clair              )


**UNSWORN DECLARATION UNDER PENALTY OF PERJURY**
**IN SUPPORT OF COMPLAINT FOR FORFEITURE**

I, Larry Brantley, do hereby depose and declare under penalty of perjury the following:

At all times relevant herein, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1. On July 24, 2018, affiant, along with TFO Kyle Waddington (TFO Waddington), conducted a traffic stop on a blue Ford Focus bearing a California registration for improper use of registration plate and for speeding on Interstate 55 southbound at mile marker 16 in Madison County, Illinois. The registration returned to a 2004 Nissan owned by David Klaus LEFEVRE out of Clearlake, California.

2. While approaching the passenger side of the vehicle to make contact with the driver, affiant could smell the odor of burnt marihuana coming from the vehicle. The driver of the vehicle was informed of the reason for the traffic stop and a request was made for his driver's license. LEFEVRE identified himself as the registered owner and provided a California's driver's license. LEFEVRE explained that he had recently purchased the vehicle in Muncie, Indiana and that the license plates were from his old vehicle. LEFEVRE stated that he left California at the end of June and drove to Muncie to visit friends. LEFEVRE stated that he had paperwork to show proof of the trade of his Nissan and the purchase of his current vehicle. As LEFEVRE spoke about the vehicle,

he displayed multiple signs of nervousness, including his hands shaking, labored breathing, stammering of speech, trembling of his voice, clearing his throat and wiping his face numerous times. LEFEVRE was advised that a warning would be issued for the traffic infraction.

3. LEFEVRE's information was queried through law enforcement databases and it was learned that LEFEVRE had a criminal drug history in 1990 for Possession for Sale-Drugs, Possession of a Controlled Substance for Sale, and Cocaine for Sale in California. In 2010, LEFEVRE had additional drug history for Unlawful Possession of a Controlled Substance in Wyoming.

4. During this time, TFO Waddington was watching LEFEVRE's body movements. TFO Waddington observed LEFEVRE light a cigarette and then move his arms in what appeared to be an uncomfortable manner. LEFEVRE's movements were seen as being anxious and unable to sit still. LEFEVRE eventually dropped his cigarette outside of the vehicle and had to open his driver's side door and exit the vehicle to retrieve it. After observing all of the nervousness from LEFEVRE, combined with his criminal drug history, TFOs believed LEFEVRE could be involved in criminal activity. At that time, TFO Kevin Thebeau (TFO Thebeau) was contacted by radio and requested to assist.

5. While TFO Waddington completed the written warning for the stop, affiant returned to LEFEVRE's vehicle and asked him if there was anything illegal inside the vehicle and LEFEVRE responded, "No." LEFEVRE was asked more specific questions regarding if there was marihuana, cocaine, methamphetamines, heroin, or any large sums of United States currency inside the vehicle. LEFEVRE denied having any of the listed drugs inside the vehicle, except for marihuana. LEFEVRE stated that he had marihuana inside the vehicle and pointed to a black

toiletry bag behind his front passenger seat. LEFEVRE was again asked if there was any large amounts of currency in the vehicle. LEFEVRE grabbed his pockets and said "I have a little bit on me." It was requested that LEFEVRE exit the vehicle and LEFEVRE complied. LEFEVRE was informed that a probable cause search would be conducted on the vehicle due to the odor and the admittance of marihuana inside the vehicle. TFO Thebeau, along with TFO Michael Reichert (TFO Reichert) and TFO Bradley Blake (TFO Blake) arrived on scene to assist.

6. TFOs began searching the vehicle while TFO Waddington waited with LEFEVRE. While searching the rear trunk compartment TFOs located a large amount of United States currency inside a large black duffel bag. The currency was wrapped in a blue bath towel and laying underneath multiple fireworks. TFOs turned the bag onto its side to show TFO Waddington and LEFEVRE the currency. TFOs asked LEFEVRE what the money was from and LEFEVRE responded, "I sold a car." Affiant walked to LEFEVRE and repeated what LEFEVRE had just said. LEFEVRE responded by saying "I sold my friends 1957 Chevy and that is the profit." TFOs asked LEFEVRE how much he made by selling his friends car and LEFEVRE stated "Twenty-four thousand, but there is twenty-one thousand there" and pointed to the money in the bag. LEFEVRE was placed in handcuffs and informed that he was being detained. TFO Blake read LEFEVRE his Miranda Rights. LEFEVRE advised TFO Blake that he understood his rights.

7. TFOs asked LEFEVRE if he had removed any of the currency from the duffel bag and LEFEVRE stated he did. LEFEVRE stated that he had a portion of the money in the front left pocket of his shorts. LEFEVRE removed the currency and stated there was $1,400.00 and handed the currency to TFO Reichert.

8. For safety concerns and for a more thorough search, the remaining contents of the

vehicle were left undisturbed for transport to the Pontoon Beach Police Department. TFO Waddington transported the vehicle while affiant secured LEFEVRE in his patrol vehicle and transported him to the police department. All other TFOs from the traffic stop relocated to the police department to assist with the processing of the LEFEVRE and the vehicle. TFO Timothy Lay (TFO Lay) responded to assist as well.

9. Upon arrival at the police department, TFO Reichert and TFO Blake made contact with Pontoon Beach Police Officer Chris Warren to conduct a K9 sniff of the seized currency. TFO Reichert and TFO Blake placed the seized currency into a clean unused paper evidence bag in the sally port of the police department. There were a total of four (4) paper evidence bags, which were closed, and placed so that the K9 could be deployed. Once the paper evidence bags were placed on the ground, K9 Officer Warren and his K9 Moose were advised to enter the sally port. K9 Officer Warren allowed K9 Moose to perform an open-air search on the bags, but K9 Moose could not give a positive indication for narcotics on the paper evidence bag which contained the seized currency.

10. TFO Reichert and TFO Blake then conducted a more thorough search of the vehicle and located the black toiletry bag containing LEFEVRE's marihuana. TFOs also located a black Echasa .22 caliber handgun with five .22 caliber rounds loaded into its magazine. The firearm's serial numbers were not visible and appeared to have been removed. The firearm was located alongside four boxes of Federal Ammunition containing 50 Rimfire Cartridges. One box of ammunition was missing 14 rounds. The firearm and the ammunition boxes were located in a side pocket of a black duffel bag which was inside the rear passenger compartment of the vehicle. The firearm was subsequently forfeited by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

4

11. The marihuana recovered from LEFEVRE's black toiletry bag was later weighed and determined to be 229.4 grams.

12. Affiant removed the handcuffs from LEFEVRE and spoke to him briefly before escorting LEFEVRE into a recorded interview room. LEFEVRE was asked if he wanted to tell the truth about the currency found in his vehicle. LEFEVRE responded, "I'm just the money courier." LEFEVRE explained that the story he told during the traffic stop was a lie. LEFEVRE said the story about his friend and the 1957 Chevy was made up and that he transports money for a marihuana organization. LEFEVRE was asked to provide the passcode to his black Moto 4 to TFOs. LEFEVRE agreed and provided TFOs with the passcode. TFO Reichert examined the contents of LEFEVRE's phone and discovered pictures of large amounts of vacuum-sealed marihuana with GPS coordinates in Muncie, Indiana.

13. TFOs met with LEFEVRE inside the police department's recorded interview room. The Miranda Rights form was again read to LEFEVRE and LEFEVRE again acknowledged that he understood his rights and initialed and signed the form indicating he wanted to speak with the TFOs. LEFEVRE stated that he transports currency for Dale Fox. LEFEVRE described Fox as an old roommate that has multiple connections to marihuana growers in California. LEFEVRE said he receives a phone call on his cellular phone and is told when and where to go. LEFEVRE said that he travels where he is told to go, rents a room, and waits. LEFEVRE waits at the hotel until someone delivers the currency to him. LEFEVRE does not know the name of the people that deliver the currency to him. LEFEVRE stated that Fox was at one time moving large amounts of marihuana across country in Penske trucks and once was caught with approximately 2,000 pounds in Chicago, Illinois. LEFEVRE named Dale Fox's cousin, Jesse Fox, who he said is also involved

in trafficking marihuana. LEFEVRE admitted to sending one to three pounds of marihuana through the postal service to different areas around the country. LEFEVRE also admitted to mailing United States currency back to California instead of driving it back. LEFEVRE was asked about the firearm located in his vehicle. LEFEVRE admitted to owning, possessing, and bringing the firearm with him for protection. The interview revealed that the sole purpose of LEFEVRE's trip was to complete the sale of drugs and to retrieve the proceeds. A Disclaimer form was presented to LEFEVRE for the United States currency seized from LEFEVRE's vehicle and LEFEVRE signed the form disclaiming any ownership of the currency.

14. On July 26, 2018, TFO Reichert and TFO Blake transported the seized currency to Loomis for an official count. The amount of currency seized from LEFEVRE was determined to be $22,400.00.

14. Based on the foregoing, declarant believes that the subject-matter $22,400.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 4th day of January, 2019.

_TFO_ [signature]
LARRY BRANTLEY
Task Force Officer
Drug Enforcement Administration

6